**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JOHN ANDESCAVAGE, | ) |
| Plaintiff, | ) ) ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| QEP RESOURCES, INC., TIMOTHY J. CUTT, PHILLIPS S. BAKER, JR., JULIE A. DILL, JOSEPH N. JAGGERS, MICHAEL J. MINAROVIC, MARY SHAFER-MALICKI, BARTH E. WHITHAM, DIAMONDBACK ENERGY, INC., and BOHEMIA MERGER SUB, INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on December 21, 2020 (the "Proposed Transaction"), pursuant to which QEP Resources, Inc. ("QEP" or the "Company") will be acquired by Diamondback Energy, Inc. ("Parent") and Bohemia Merger Sub, Inc. ("Merger Sub," and together with Parent, "Diamondback").

2. On December 20, 2020, QEP's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Diamondback. Pursuant to the terms of the Merger Agreement, QEP's stockholders will receive 0.05 shares of Parent common stock for each share of QEP common stock they own.

3. On January 22, 2021, defendants filed a Form S-4 Registration Statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of QEP common stock.

9. Defendant QEP is a Delaware corporation and a party to the Merger Agreement. QEP's common stock is traded on the NYSE under the ticker symbol "QEP."

10. Defendant Timothy J. Cutt is President, Chief Executive Officer, and a director of the Company.

11. Defendant Phillips S. Baker, Jr. is a director of the Company.

12. Defendant Julie A. Dill is a director of the Company.

13. Defendant Joseph N. Jaggers is a director of the Company.

14. Defendant Michael J. Minarovic is a director of the Company.

15. Defendant Mary Shafer-Malicki is Chair of the Board of the Company.

16. Defendant Barth E. Whitham is a director of the Company.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

19. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

20. QEP is an independent crude oil and natural gas exploration and production company focused in two regions of the United States: the Southern Region (primarily in Texas) and the Northern Region (primarily in North Dakota).

21. On December 20, 2020, QEP's Board caused the Company to enter into the Merger Agreement with Diamondback.

22. Pursuant to the terms of the Merger Agreement, QEP's stockholders will receive 0.05 shares of Parent common stock for each share of QEP common stock they own.

23. According to the press release announcing the Proposed Transaction:

Diamondback Energy, Inc. (NASDAQ: FANG) ("Diamondback" or the "Company") and QEP Resources (NYSE: QEP) ("QEP") today announced that they have entered into a definitive agreement under which Diamondback will acquire QEP in an all-stock transaction valued at approximately $2.2 billion, including QEP's net debt of $1.6 billion as of September 30, 2020. The consideration will consist of 0.05 shares of Diamondback common stock for each share of QEP common stock, representing an implied value to each QEP stockholder of $2.29 per share based on the closing price of Diamondback common stock on December 18, 2020. The transaction was unanimously approved by the Board of Directors of each company. . . .

TRANSACTION DETAILS

Under the terms of the definitive merger agreement, stockholders of QEP will receive 0.05 shares of Diamondback common stock in exchange for each share of QEP common stock, representing an implied value to each QEP stockholder of $2.29 per share based on the closing price of Diamondback common stock on December 18, 2020. Upon closing the transaction and excluding the impact of shares to be issued in the previously announced acquisition of assets from Guidon, Diamondback stockholders will own approximately 92.8% of the combined company, and QEP stockholders will own approximately 7.2%.

Diamondback remains committed to conservative financial management and is expected to maintain its Investment Grade credit ratings pro forma for the transaction.

The transaction has been unanimously approved by the Boards of Directors of Diamondback and QEP and is expected to be completed in the first quarter or early in the second quarter of 2021, subject to the approval of QEP stockholders, the satisfaction of certain regulatory approvals and other customary closing conditions. Upon closing, Diamondback's Board of Directors and executive team will remain unchanged. Additionally, the Company will continue to be headquartered in Midland, Texas.

ADVISORS

Goldman Sachs & Co. LLC is serving as lead financial advisor to Diamondback, with Moelis & Company also serving as financial advisor to Diamondback. Akin Gump Strauss Hauer & Feld LLP is serving as legal advisor to Diamondback. Evercore and Latham & Watkins LLP are serving as exclusive financial advisor and legal advisor to QEP, respectively.

*The Registration Statement Omits Material Information, Rendering It False and Misleading*

24. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

25. As set forth below, the Registration Statement omits material information.

26. First, the Registration Statement omits material information regarding the Company's and Diamondback's financial projections.

27. With respect to QEP's financial projections, the Registration Statement fails to disclose, for each set of projections: (i) all line items used to calculate adjusted EBITDA, free cash flow, and net debt/adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

28. With respect to the Diamondback's financial projections, the Registration Statement fails to disclose, for each set of projections: (i) all line items used to calculate adjusted EBITDA, free cash flow, and net debt/adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

29. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

30. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor, Evercore Group L.L.C. ("Evercore").

31. With respect to Evercore's Net Asset Value Analysis for QEP on a Standalone Basis, the Registration Statement fails to disclose: (i) the cash flows used in the analysis and all underlying line items; (ii) the individual inputs and assumptions underlying the discount rates ranging from 8% to 35%; (iii) the range of total reserve value under each of the QEP Management

Plan Pricing and the NYMEX Strip Pricing scenarios; (iv) the values of the future estimated effects of QEP's hedging, general and administrative expenses, cash taxes, and net debt used in the analysis; and (v) the number of fully diluted outstanding shares of QEP common stock.

32. With respect to Evercore's Discounted Cash Flow Analysis for QEP on a Standalone Basis, the Registration Statement fails to disclose: (i) the unlevered free cash flows used in the analysis and all underlying line items; (ii) the terminal values; (iii) the individual inputs and assumptions underlying the perpetuity growth rates of 2.0% to 3.0% and the discount rates ranging from 11.0% to 13.0%; (iv) Evercore's basis for using the multiples ranging from 3.5x to 4.5x; (v) the net debt used in the analysis; and (vi) the number of fully diluted outstanding shares of QEP common stock.

33. With respect to Evercore's Analysts' Price Targets analyses, the Registration Statement fails to disclose: (i) the price targets observed in the analyses; and (ii) the sources thereof.

34. With respect to Evercore's Premia Paid Analysis, the Registration Statement fails to disclose the premiums paid in the transactions observed in the analysis.

35. With respect to Evercore's Discounted Cash Flow Analysis for Diamondback on a Standalone Basis, the Registration Statement fails to disclose: (i) the unlevered free cash flows used in the analysis and all underlying line items; (ii) the terminal values; (iii) the individual inputs and assumptions underlying the perpetuity growth rates of 2.0% to 3.0% and the discount rates ranging from 11.0% to 9.0%; (iv) Evercore's basis for using the multiples ranging from 5.5x to 7.5x; (v) the net debt used in the analysis; (vi) the number of fully diluted outstanding of Diamondback common stock; and (vii) the value of Diamondback's direct interest in Viper Energy Partners and Rattler Midstream.

36. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37. Third, the Registration Statement omits material information regarding Evercore.

38. The Registration Statement fails to disclose the actual amount of compensation Evercore will receive in connection with its engagement.

39. The Registration Statement also fails to disclose the timing and nature of the past services Evercore provided to the parties to the Merger Agreement and their affiliates.

40. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

41. Fourth, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions.

42. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

43. The omission of the above-referenced material information renders the Registration Statement false and misleading.

44. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and QEP

45.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46.     The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading.  QEP is liable as the issuer of these statements.

47.     The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

48.     The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

49.     The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

50.     The Registration Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

51.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

52. Because of the false and misleading statements in the Registration Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Diamondback

53. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54. The Individual Defendants and Diamondback acted as controlling persons of QEP within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of QEP and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

55. Each of the Individual Defendants and Diamondback was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

57. Diamondback also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

58. By virtue of the foregoing, the Individual Defendants and Diamondback violated Section 20(a) of the 1934 Act.

59. As set forth above, the Individual Defendants and Diamondback had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: January 27, 2021

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Seth D. Rigrodsky (#3147)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Email: sdr@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*